**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 11-cv-00396-REB-KMT

ELISA GARLAND,

      Plaintiff,

v.

THE BOARD OF EDUCATION OF DENVER PUBLIC SCHOOL DISTRICT NO. 1, a
political subdivision of the State of Colorado,
JACKIE SCHNEIDER, in her individual and official capacity,
JOHN YOUNGQUIST, in his individual and official capacity,
WILLIAM EWING, in his individual and official capacity, and
SHAWN ALLEGREZZA, in her individual and official capacity,

      Defendants.

---

## ORDER CONCERNING DEFENDANTS' MOTION TO DISMISS

---

**Blackburn, J.**

      This matter is before me on the defendants' **Motion To Dismiss Federal law
and Defamation Claims** [#17][1] filed May 9, 2011.  The plaintiff filed a response [#28],
and the defendants filed a reply [#34].  I grant the motion in part and deny it in part.

### I.  JURISDICTION

      I have jurisdiction over this case under 28 U.S.C. § 1331 (federal question) and
**28 U.S.C. § 1367 (supplemental).**

### II.  STANDARD OF REVIEW

      When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), I must

---

[1]  "[#17]" is an example of the convention I use to identify the docket number assigned to a
specific paper by the court's case management and electronic case filing system (CM/ECF). I use this
convention throughout this order.

determine whether the allegations of the complaint are sufficient to state a claim within the meaning of Fed. R. Civ. P. 8(a).  For many years, "courts followed the axiom that dismissal is only appropriate where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  ***Kansas Penn Gaming, LLC v. Collins***, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting ***Conley v. Gibson***, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).  Noting that this standard "has been questioned, criticized, and explained away long enough," the Supreme Court of the United States supplanted the standard in ***Bell Atlantic Corp. v. Twombly***, 550 U.S. 544, 562, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007).  Under ***Twombly***, I now review the complaint to determine whether it "'contains enough facts to state a claim to relief that is plausible on its face.'"  ***Ridge at Red Hawk, L.L.C. v. Schneider***, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting ***Twombly***, 127 S.Ct. at 1974).  "This pleading requirement serves two purposes:  to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense, and to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim."  ***Kansas Penn Gaming***, 656 F.3d at 1215 (citation and internal quotation marks omitted).

As previously, I must accept all well-pleaded factual allegations of the complaint as true.  ***McDonald v. Kinder-Morgan, Inc.***, 287 F.3d 992, 997 (10th Cir. 2002).  Contrastingly, mere "labels and conclusions or a formulaic recitation of the elements of a cause of action" will not be sufficient to defeat a motion to dismiss.  ***Ashcroft v. Iqbal***, 556 U.S. 662, – (2009) (citations and internal quotation marks omitted).  ***See also Robbins v. Oklahoma***, 519 F.3d 1242, 1247-48 (10th Cir. 2008) ("Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement

of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.") (quoting *Twombly*, 127 S.Ct. at 1974) (internal citations and footnote omitted).  Moreover, to meet the plausibility standard, the complaint must suggest "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. at 1949.  *See also Ridge at Red Hawk*, 493 F.3d at 1177 ("[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.") (emphases in original).  For this reason, the complaint must allege facts sufficient to "raise a right to relief above the speculative level." *Kansas Penn Gaming*, 656 F.3d at 1214 (quoting *Twombly*, 127 S.Ct. at 1965).  The standard will not be met when the allegations of the complaint are "so general that they encompass a wide swath of conduct, much of it innocent." *Robbins*, 519 F.3d at 1248.  Instead "[t]he allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.*

The nature and specificity of the allegations required to state a plausible claim will vary based on context and will "require[] the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950; *see also Kansas Penn Gaming*, 656 F.3d at 1215.  Nevertheless, the standard remains a liberal one, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City and County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting *Twombly*, 127 S.Ct. at 1965) (internal quotation marks omitted).

3

### III.  PLAINTIFF'S ALLEGATIONS & CLAIMS

The operative complaint is the plaintiffs' **Complaint and Jury Demand** [#1] filed February 15, 2011 (Complaint).[2]  In August, 2008, the plaintiff, Elisa Garland, was hired at East High School as a participant in the Teacher in Residence Program (TIR) of Metro State University.  Ms. Garland participated in the TIR program from August, 2008, through May, 2010.  ¶ 9.  The TIR program is a two year program.  ¶ 20.

Another teacher, Jackie Schneider, was Ms. Garland's mentor.  According to Ms. Garland, beginning in January, 2010, Ms. Schneider began a campaign to tarnish and ruin Ms. Garland's reputation.  ¶ 10.  Sometime in 2010, Ms. Garland learned of an allegation that she was showing up to work late and her students were wandering the halls.  ¶ 11.  Ms. Garland responded to the principal, John Younquist, and denied the allegations.

In March, 2010, Ms. Garland was tasked with administering the CSAP, the Colorado State Assessment Plan-Measures.  The night before the CSAP, Ms. Garland ate contaminated food.  As a result, she became ill as she administered the CSAP and vomited in a trash can.  As a result, she had Ms. Schneider finish the administration of the CSAP.  ¶ 12.  The next morning, Ms. Garland was summoned to meet with the principal, Mr. Youngquist, and an assistant principal, William Ewing.  Mr. Youngquist told Ms. Garland that her mentor, Ms Schneider, reported that "Elisa was in hysteria about giving the CSAP, she was crying and saying she wanted to quit her job.  She did not want to give the test and therefore vomited."  ¶ 12.  Ms. Garland denied this claim.

One week later, Ms. Garland was summoned to Mr. Ewing's office.  Mr. Ewing

---

[2]  The plaintiff filed a motion to amend her complaint [#76] field January 31, 2012.  In an order issued concurrently with this order, I deny that motion. I will cite to the Complaint by paragraph number, e.g., (¶ 1).

accused Ms. Garland of improperly disclosing evaluations to paraprofessionals and discussing those evaluations with paraprofessionals.  ¶ 13.  Ms. Garland denied this allegation.  Later, Ms. Garland learned that Ms. Schneider was overheard telling another school employee that Ms. Garland was disclosing improperly the evaluations of paraprofessionals.  ¶ 14.  Ms. Garland then advised Mr. Ewing that Ms. Schneider was wrongfully targeting Ms. Garland.  *Id.*

A short time later, a staff member told Ms. Garland of a comment made by Ms. Schneider.  Reportedly, Ms. Schneider had approached a co-worker at the school and offered that co-worker Ms. Garland's position.  ¶ 15.  Ms. Schneider reportedly told the co-worker that Ms. Garland's position would be open in the near future. The co-worker then told Mr. Ewing of Ms. Schneider's statements and claimed Ms. Schneider was targeting Ms. Garland.  ¶ 15.

On March 26, 2010, Mr. Ewing told Ms. Garland that she had satisfactory evaluations and her probationary employment status would end after one more year of teaching.  ¶ 17.  Mr. Ewing advised Ms. Garland that she had the right to submit a rebuttal statement to her evaluation if she wished to do so.  Ms. Garland filed a rebuttal. On Aril 18, Ms. Garland was summoned to meet with Mr. Youngquist and Mr. Ewing about her evaluation.  Mr. Younquist told Ms. Garland that her contract was not being renewed and that she could not apply to other Denver public schools.  ¶ 20.  Mr. Youquist said also that he would not sign off on Ms. Garland's Teacher in Residence license, which meant that Ms. Garland could not get a regular teaching license after completing the TIR program.

Later the same day, Ms. Garland was asked to sign a document stating that Mr. Ewing had observed her as a teacher on several dates.  ¶ 22.  Ms. Garland refused to

5

sign because the dates and other information shown on the document were not accurate. The next day, April 19, Mr. Ewing presented Ms. Garland with Ms. Garland's contested evaluation, including a statement of the inaccurate observation dates. ¶ 24. Ms. Garland refused to sign the document.

On April 19, 2010, Ms. Garland was summoned to a meeting with Mr. Ewing and Mr. Younquist. Mr. Ewing and Mr. Youngquist told Ms. Garland that she had made verbal threats to Ms. Schneider. ¶ 25. Ms. Garland denied that she had made such treats. The same day the Denver police were called to East High School. Shawn Allegrezza[3] reported to the police officers that Ms. Garland had made threatening statements directed toward Ms. Schneider. Ms. Allegrezza reported that Ms. Garland told Ms Schneider that she, Ms. Garland, was "'going to fuck her up, put Visine (sic) in her coffee and key her car.'" ¶ 36. Mr. Ewing told police that Ms. Garland had threatened to burn the school down. ¶ 30. Mr. Ewing told the Denver police officers that Ms. Garland was a disgruntled employee. ¶ 36.

Based on these reports, Ms. Garland was charged with disturbing the peace, unlawful acts around school, and threats to injure person and property. ¶ 31. On April 23, 2010, a warrant for Ms. Garland's arrest was issued. On April 28, 2010, police officers arrested Ms. Garland. About ten hours later, Ms. Garland was released after posting bond. ¶ 32. Ultimately, the criminal charges were dismissed. ¶ 33.

Based on these allegations, Ms. Garland asserts six claims for relief. First, she alleges a Fourth Amendment claim against the Board of Education of Denver Public School Dist. No. 1 (the School Board), Mr. Ewing, and Ms. Allegrezza. Second, she

---

[3] Shawn Allegrezza's gender and role at East High School are not specified in the Complaint. In their motion [#17], the defendants refer to Shawn Allegrezza as "Ms. Allegrezza." Assuming the defendants are correct, I will refer to Shawn Allegrezza as Ms. Allegrezza.

alleges a Fourteenth Amendment due process claim against all defendants. Third, she alleges a breach of contract claim against the School Board, Mr. Youngquist, and Mr. Ewing.  Fourth, she asserts a defamation claim against Mr. Ewing, Ms. Schneider, and Ms. Allegrezza.  Fifth, she asserts a malicious prosecution claim against Mr. Ewing and Ms. Allegrezza.  Sixth, she alleges a tortious interference with prospective business relationship claim against Mr. Ewing and Mr. Youngquist.  In addition to the four individual defendants, Ms. Schneider, Mr. Younqquist, Mr. Ewing, and Ms. Allegrezza, Ms. Garland names the School Board as a defendant in three of her claims.

## IV.  FOURTH AMENDMENT MALICIOUS PROSECUTION CLAIM

In her first claim for relief, Ms. Garland alleges that her rights under the Fourth Amendment were violated by the School Board, Mr. Ewing, and Ms. Allegrezza when Mr. Ewing and Ms. Allegrezza knowingly made false reports to police about threats allegedly made by Ms. Garland on April 19, 2010.  Those reports led to Ms. Garland's arrest.  The defendants argue that this claim must be dismissed as to Mr. Ewing and Ms. Allegrezza.

Ms. Garland brings her Fourth Amendment claim under 42 U.S.C. § 1983.  In order to allege a § 1983 claim, a plaintiff must allege facts showing that the defendant deprived the plaintiff of a right secured by the Constitution or other federal law and that the defendant was acting under color of state law when the defendant caused the deprivation of the plaintiff's right.  ***American Mfrs. Mut. Ins. Co. v. Sullivan***, 526 U.S. 40, 50 (1999).  Private conduct, no matter how wrongful or discriminatory, is not covered by § 1983.  ***Id***.

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law

and made possible only because the wrongdoer is clothed with the authority of state law.' " *West v. Atkins*, 487 U.S. 42, 49 (1988) (*quoting United States v. Classic*, 313 U.S. 299, 326 (1941)).  For an action to be under color of state law, there must be a real nexus between the defendant's use or misuse of his or her authority as a public employee and the violation allegedly committed by the defendant.  *Jojola v. Chavez*, 55 F.3d 488, 493 (10th Cir. 1995).  "It is the plaintiff's burden to plead, and ultimately establish, the existence of a real nexus between the defendant's conduct and the defendant's badge of state authority in order to demonstrate that action was taken under color of state law."  *E.F.W. v. St. Stephen's Indian High Sch.*, 264 F.3d 1297, 1305 (10th Cir. 2001) (quotation and citation omitted).

According to the Complaint, Mr. Ewing and Ms. Allegrezza were Denver Public Schools employees, the police reports where made at the school during school hours concerning school business and while Mr. Ewing and Ms. Allegrezza were acting as school employees.  These circumstances, Ms. Garland contends, show that the police reports were made while these individuals were acting under color of state law.[4]

The specific action in question here is the action taken by Mr. Ewing and Ms. Allegrezza when they reported to the Denver Police that Ms. Garland had made certain threats to another school employee.  I conclude that making the police reports was not an exercise of authority by Mr. Ewing's and Ms. Allegrezza as school employees.  Rather, Mr. Ewing and Ms. Allegrezza had the power to report the alleged threats to the

---

[4] In her response, Ms. Garland argues also that Mr. Ewing made the report under the Safe-2-tell report statute, §16-13.5-103, C.R.S.  Use of this statute, she asserts, shows Mr. Ewing was acting under color of state law.  *Response*, pp. 3-4.  There is no such allegation in the Complaint, and Ms. Garland may not supplement her allegations in her Complaint in her response.  Even if the Complaint included such allegations, use of the statute would not establish action under color of state law.  The statute concerns anonymous reports by students and school employees about dangerous, violent, or criminal activities.  §§16-15.8-102, 103, C.R.S.  The statute does not clothe the individual defendants with any special authority to report crime in a school.

police whether they were school employees or not.  Notably, if a private person other than a school employee had heard Ms. Garland make the alleged threats, that private person would have had authority, equal to that of Mr. Ewing and Ms. Allegrezza, to report the threats to the police.  The authority of Mr. Ewing and Ms. Allegrezza to make the police report was not "possible only because the (alleged) wrongdoer is clothed with the authority of state law."  *West v. Atkins*, 487 U.S. at 49 (internal quotation and citation omitted).  The allegations in the complaint fail to demonstrate a real nexus between the conduct of these two defendants and their badge of state authority as school employees.  As a result, the alleged actions are not actions taken under color of state law.

Action under color of state law is a crucial element of a claim under § 1983.  Absent sufficient allegations in support of this element, the first claim for relief must be dismissed as to Mr. Ewing and Ms. Allegrezza.  Additionally, absent sufficient allegation of action under color of state law by the individual defendants, there is no basis on which to hold the School Board liable on this claim.  Thus, this claim must be dismissed as to the School Board as well.

## V.  FOURTEENTH AMENDMENT CLAIM

Ms. Garland's second claim for relief under the Fourteenth Amendment  is multi-faceted.  As the defendants note, the precise bases of this claim are not entirely clear in the Complaint.  Reasonably, the defendants read four putative bases in the complaint: (a) a claim of deprivation of a liberty interest when Ms. Garland was arrested based on the reports to the police by Mr. Ewing and Ms. Allegrezza; (b) a claim of deprivation of a liberty interest in Ms. Garland's name and reputation based on the statements of Mr. Ewing and Ms. Allegrezza; (c) a claim of deprivation of a liberty interest in Ms. Garland's

teaching license; or (d) a claim of deprivation of a property interest in Ms. Garland's continued employment.  I address each of these possible bases in turn.

### A.  Ms. Schneider & Malicious Prosecution

First, Ms. Garland does not respond to the defendants' argument that there are no allegations in the Complaint that implicate Ms. Schneider in the Fourteenth Amendment claim.  There are no such allegations in the Complaint.  Thus, Ms. Garland's second claim for relief must be dismissed as to Ms. Schneider.

Second, Ms. Garland concedes that she cannot pursue a claim under the Fourteenth Amendment for malicious prosecution.  *Response* [#28], p. 9.  This claim asserts the deprivation of a liberty interest when Ms. Garland was arrested based on the reports to the police by Mr. Ewing and Ms. Allegrezza.  Thus, this aspect of Ms. Garland's second claim for relief must be dismissed.

### B.  Due Process - Liberty Interest - Name & Reputation

A public employee can demonstrate infringement of a constitutionally protected liberty interest by showing: (1) statements by the employer that impugn the employee's good name, reputation, honor, or integrity; (2) the statements were false; (3) the statements occurred in the course of terminating the employee and foreclosed other employment opportunities; and (4) the statements were published. ***Darr v. Town of Telluride*, Colo**, 495 F.3d 1243, 1255 (10th Cir. 2007); ***Renaud v. Wyo. Dept. of Family Services***, 203 F.3d 723, 728 (10th Cir. 2000).[5]  The liberty interest at issue in these circumstances is a person's liberty interest in her good name and reputation as they relate to the employment of that person. ***Darr***, 495 F.3d at 1255.

---

[5]  The plaintiff notes that there is some dispute about whether the third element should be disjunctive or conjunctive.  *Response* [#28], p. 10.  Reading ***Darr*** and ***Renaud*** together, I conclude that the third element is conjunctive.

> Due process requires that an employee whose liberty interest is threatened be accorded notice and a hearing. The purpose of such notice and hearing is to provide the person an opportunity to clear his name. Once a person has cleared his name at a hearing, his employer, of course, may remain free to deny him future employment for other reasons. However, only if the employer creates and disseminates a false and defamatory impression about the employee in connection with his termination is such a hearing required. No name-clearing hearing is required when the employee does not dispute the substantial truth of the charges against him.

*Hicks*, 942 F.2d 737, 745 -746 (10th Cir.1991).

The defendants argue that the plaintiff has not alleged any facts showing that the statements in question foreclosed other employment opportunities. I disagree. Ms. Garland alleges that the defendants' actions precluded her from taking advantage of other teaching employment opportunities in Colorado, and she describes how the refusal of Mr. Ewing and Mr. Youngquist to renew her employment and sign off on her TIR license has precluded her from working as a teacher in Colorado. These alleged actions are tied closely to the allegedly false statements at issue in this case and are sufficient to allege foreclosed employment opportunities.[6]

The defendants argue also that the plaintiff's due process claim based on the defendants' alleged false statements must fail because (1) the plaintiff did not request a name-clearing hearing; or (2) the plaintiff received such a hearing.[7] In her Complaint, Ms. Garland alleges that as permitted by her collective bargaining agreement, she filed a grievance concerning her termination. ¶ 27. She indicates that further procedures on

---

[6]   With her response [#28], Ms. Garland included an affidavit addressing the issue of foreclosed employment opportunity. However, in responding to a motion to dismiss, Ms. Garland may not add allegations to her complaint via affidavit. Thus, I disregard the affidavit.

[7]   In her response, the plaintiff describes hearings held on the grievance she filed after her termination. *Response* [#28], pp. 11-12. Ms. Garland may not plead additional facts in her response to a motion to dismiss. Thus, I disregard these statements of fact.

the grievance were undertaken, but she does not specifically describe the procedures on the grievance or their results. ¶ 27. Notably, the grievance procedure provided by a collective bargaining agreement can satisfy a plaintiff's entitlement to post-deprivation due process. *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1256 (10th Cir. 1998).

The defendants argue that if the plaintiff did not request a hearing, then she waived a hearing and her due process claim. "Courts indulge every presumption against the waiver of fundamental constitutional rights." *United States v. Williamson*, 806 F.2d 216, 219 (10th Cir.1986). Despite this strong presumption against waiver, due process rights may be waived. "Waiver depends upon the facts of a particular case, and is good only if it is done in an informed manner." *Johnson v. United States Dep't of Agriculture*, 734 F.2d 774, 784 (11th Cir.1984) (citations omitted). Assuming the allegations in the Complaint to be true, there is no basis to conclude that Ms. Garland made an informed waiver of her right to a hearing.

Alternatively, the defendants argue in their reply that if Ms. Garland was afforded a name clearing hearing, she has been given all of the process to which she is due. *Reply* [#34], p. 8. Ms. Garland was given all of the process to which she is due only if any such hearing complied with the requirements of the Due Process Clause. The clear implication of Ms. Garland's allegations is that the grievance procedure she initiated did not resolve the problem created by the defendants' allegedly false statements. Given her adequate pleading of the primary elements of this claim, I conclude that Ms. Garland's allegations are sufficient to state a due process claim concerning the allegedly false statements made by the defendants.

### C. Due Process - Liberty Interest - Teaching License

According to Ms. Garland, the defendants violated her right to due process when

they precluded her from obtaining a teacher's license, a license for which she is qualified.  ¶ 47.  Ms. Garland says Mr. Youngquist told her that he would not sign off on Ms. Garland's TIR license, a two year license, and that his refusal precluded Ms. Garland from obtaining a regular teaching license.  ¶ 20.  Mr. Youngquist made this statement on April 18, 2010, one day before the reports to police about Ms. Garland were made.  ¶ 20.  Ms. Garland alleges that she had a "reasonable expectation in obtaining her teacher's license."  ¶ 48.

The defendants argue that Ms. Garland's allegations do not support a due process claim based on a claimed liberty interest in the prospect of a regular teaching license.  In her response, Ms. Garland essentially reiterates her argument concerning her name and reputation due process claim, discussed above.  *Response* [#28], p. 12. She cites no authority for the proposition that, independent of her name and reputation due process claim, she has a liberty interest in a teaching license after completing the TIR program.  To the extent Ms. Garland intends and attempts to assert a claim that she was deprived of a liberty interest in a teaching license after completing the TIR program, independent of her name and reputation due process claim, her second claim for relief must be dismissed.

### D.  Due Process - Property Interest - Continued Employment

The defendants contend that Ms. Garland had no property interest in her continued employment and, therefore, she may not assert a due process claim based on such a property interest.  "(A)n employee may possess a property interest in public employment if she has tenure, a contract for a fixed term, an implied promise of continued employment, or if state law allows dismissal only for cause or its equivalent." ***Darr v. Town of Telluride, Colo.***, 495 F.3d 1243, 1251 (10th Cir. 2007).  I find and

conclude that the allegations in the Complaint do not state a claim for a violation of due process based on a property interest in continued employment.

Ms. Garland participated in the TIR program from August, 2008, through May, 2010. ¶ 9. The TIR program is a two year program. ¶ 20. Ms. Garland was put on paid leave beginning April 20, 2010, and remained on paid leave until August 31, 2010. ¶ 26. During this time she was a probationary teacher under a contract with the Denver Public Schools. *Motion* [#17], Exhibit A (Contract).[8] The Contract provides that the school district "does not promise or represent that the teacher's employment shall be continued/extended/renewed for any time period including the anticipated duration of the teacher's participation in the TIR…program." *Contract*, p.3, ¶10.

Ms. Garland was paid under Contract with the School Board until the end of her two year TIR teaching program. Ms. Garland did not have tenure, there was no implied promise of continued employment, and there was no state law limiting dismissal to dismissal for cause. Thus, the Contract did not create any property interest in continued employment. ***Darr***, 495 F.3d at 1251. Additionally, Ms. Garland's paid administrative leave from May to August, 2010, does not demonstrate deprivation of a property interest in her continued employment. ***See, e.g., Holloway v. Reeves***, 277 F.3d 1035, 1039 - 1040 (8th Cir. 2002).

In her response Ms. Garland contends that her collective bargaining agreement (CBA) created a property interest in her continued employment. A CBA can create a property interest in continued employment, but that interest must be based on one or

---

[8] Although the Contract is not attached to the Complaint, it is mentioned in the Complaint. As a result, the contract may be considered in resolving the motion to dismiss. If a document is referenced in or attached to the complaint and is central to plaintiff's claims, I may consider an indisputably authentic copy of the document in resolving a motion to dismiss. ***See GFF Corp. v. Associated Wholesale Grocers, Inc.***, 130 F.3d 1381, 1384-85 (10th Cir. 1997).

more provisions in the agreement that create such an interest. ***Hennigh v. City of Shawnee***, 155 F.3d 1249, 1255 (10th Cir. 1998). In support of her breach of contract claim, Ms. Garland cites provisions of the CBA in her Complaint. ¶¶ 54 - 55. Considered with the terms of Ms. Garland's contracts with the School Board, I find and conclude that none of the provisions of the CBA creates a property interest in continued employment. Ms. Garland's due process claim based on an alleged property interest in her continued employment must be dismissed.

## VI.  CLAIMS AGAINST SCHOOL BOARD

The plaintiff names the School Board as a defendant in her two § 1983 claims, which are her first and second claims for relief. The defendants argue that the plaintiff's allegations are not sufficient to state a claim against the School Board.

The precise requirements for pleading and establishing a municipal liability or supervisory liability claim under § 1983 have been in question following the opinion of the United States Supreme Court in ***Ashcroft v. Iqbal***, 556 U.S. 662, – (2009). However, the United States Court of Appeals for the Tenth Circuit has held that claims under § 1983based on supervisory or municipal liability remain viable under ***Iqubal*** if the specific pleading and proof requirements are met. ***Dodds v. Richardson***, 614 F.3d 1185, 1199 (10th Cir. 2010).

A plaintiff suing a municipality or, here, the School Board, under § 1983 for the actions of one of its employees must allege with the requisite factual particularity: (1) that a School Board employee committed a constitutional violation; and (2) that a School Board policy or custom was the moving force behind the constitutional deprivation. ***Jiron v. City of Lakewood***,  392 F.3d 410, 419 (10th Cir. 2004). A municipality or other local government unit is liable for constitutional torts only if the

alleged unconstitutional acts implement a policy, ordinance or custom of the local government. *Monell v. Department of Social Services*, 436 U.S. 658, 690, 694 (1978); *Garcia v. Salt Lake County*, 768 F.2d 303, 308 & n.4 (10th Cir. 1985). Further, a municipality is responsible under § 1983 only when the execution of a government policy or custom actually causes an injury of constitutional dimensions. *Monell*, 436 U.S. at 694; *see also D.T. v. Independent School District*, 894 F.2d 1176, 1187 (10th Cir. 1990) (plaintiff must prove direct nexus between constitutional tort and municipality's authorization or approval thereof, either expressly or otherwise, by the adoption of any plan or policy). Proof of a direct link requires proof that the municipality authorized or approved of the alleged misconduct. *Independent School District*, 894 F.2d at 1187. "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).

This aspect is at issue also in Ms. Garland's motion to amend her complaint [#76]. Ms. Garland seeks leave to amend to add two additional sentences to the Complaint. First, Ms. Garland proposes to add a final sentence to paragraph 42, part of her Fourth Amendment claim. The proposed sentence reads: "Moreover, Defendants were acting under the policy, custom and procedures of Denver Public School (sic) when relaying the statements to Denver Police Officers." *Proposed amended complaint* [#76-3], ¶ 42. Second, Ms. Garland proposes to add a final sentence to paragraph 51 of the complaint, part of her Fourteenth Amendment claim. The proposed sentence reads: "Moreover, Defendants were acting under the policy, custom and procedures of Denver Public School when violating Plaintiff's rights." *Id.*, ¶ 51.

Even if Ms. Garland were permitted to add these allegations to her Complaint, her allegations would still not state a claim against the School Board.  These allegations do not describe any particular policies created and implemented by the board, they do not indicate how any policy caused the alleged constitutional harm, and they do not allege that the School Board authorized or approved the alleged wrongful conduct.  The plaintiff's proposed additional allegations are legal conclusions without any supporting factual allegations.  "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008).

In her response to the motion to dismiss, Ms. Garland asserts the alternative theory that Mr. Ewing, an assistant principal, is a final policy maker and, that by taking the actions he allegedly took, he created official policy of the district.  Actions by a final policy maker can form the basis for a municipal liability claim. *See, e.g., Pembaur v. City of Cincinnati*, 475 U.S. 469, 484-85 (1986); *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988).  However, the allegations in Ms. Garland's Complaint do not support such a claim.  There is no allegation that Mr. Ewing is a final policy maker, much less factual allegations to support that legal conclusion.

Thus the plaintiff's first and second claims for relief do not state claims on which relief can be granted against the School Board.  These claims must be dismissed as to the School Board.

## VII.  DEFAMATION CLAIM

According to the defendants, Ms. Garland's claim for defamation against Mr. Ewing must be dismissed because Ms. Garland has not alleged that Mr. Ewing

published a false and defamatory statement or that he published the statement maliciously.  The parties agree that malice, meaning knowledge that a statement is false or reckless disregard for the truth, is a required element of Ms. Garland's claim for defamation.  This element is required under the qualified privilege applicable to many employer statements about employee conduct.  ***See, e.g., Thompson v. Public Service Co. of Colorado***, 800 P.2d 1299, 1301 - 1306 (Colo. 1990).  To state a claim for relief for defamation under Colorado law, the plaintiff must allege that the defendant (1) made a statement; (2) which statement was published to third persons; (3) the substance of the statement was false when published; and (4) the defendant knew it was false or made the statement with reckless disregard as to whether it was false or not.  ***Zerr v. Johnson***, 894 F.Supp. 372 (D. Colo. 1995).

Ms. Garland's allegations indicate that Mr. Ewing's report to police was based on the report by Ms. Allegrezza to Mr. Ewing.  Given this fact, the defendants contend that Mr. Ewing "obviously believed Ms. Allegrezza."  According to the defendants, if Mr. Ewing truthfully reported to police that Ms. Allegrezza's made her statement, then Mr. Ewing cannot be seen as having made a false statement.  Further, the defendants contend that given these circumstances, Mr. Ewing's report could not have been made knowing the statement was false or with reckless disregard for its truth or falsity.

The issue of malice plays into both of these arguments.  I conclude that the plaintiff's allegations are sufficient to allege that Mr. Ewing acted with malice, which includes knowledge that the statement was false or reckless disregard for its truth or falsity.  Mr. Garland describes overt hostility between Mr. Ewing and Ms. Garland in the days leading up to the report to police.  ¶¶ 12 - 25.  Ms. Garland alleges that Mr. Ewing failed to investigate Ms. Allegrezza's report before relaying this information to police.  ¶

18

41.  These factual allegations are sufficient at the pleading stage to support Ms.

Garland's allegations that Mr. Ewing made a false statement and that he did so with

malice.

Ms. Garland alleges that Ms. Schneider defamed Ms. Garland when Ms.

Schneider described the threats allegedly made by Ms. Garland.  ¶ 62.  This description

allegedly was contained in a document Ms. Schneider filed in Denver County Court as

part of her effort to obtain a restraining order against Ms. Garland.  *Id.*  Ms. Schneider's

statement was made to the Denver County Court as part of a proceeding before that

court.  Her statement is directly analogous to the testimony of a witness before a court

or grand jury.   In this context, Ms. Schneider's statement is protected by an absolute

privilege.  ***Briscoe v. LaHue***, 460 U.S. 325, 330 - 331 (1983).  Mr. Garland's arguments

to the contrary are not persuasive.  Thus, Ms. Garland's claim for defamation against

Ms. Schneider must be dismissed.

### VIII.  CONCLUSION AND ORDERS

Under FED. R. CIV. P. 8 and 12(b)(6), the allegations in Ms. Garland's Complaint

[#1] are insufficient to state claims for relief on the following claims: (1) her Fourth

Amendment malicious prosecution claim, as alleged in her first claim for relief; (2) her

Fourteenth Amendment claim to the extent that claim is asserted against Ms.

Schneider, or is based on a claim of malicious prosecution, a claimed liberty interest in

her teaching license, or a claimed property interest in her continued employment, all as

alleged in her second claim for relief; (3) any claim under § 1983 against the School

Board, as alleged in her first and second claims for relief; and (4) her defamation claim

against Ms. Schneider, as alleged in her fourth claim for relief.  The defendants' motion

to dismiss is granted as to these claims.  Otherwise, the defendants' motion to dismiss

is denied.

**THEREFORE, IT IS ORDERED** as follows:

1.  That the defendants' **Motion To Dismiss Federal law and Defamation Claims** [#17] filed May 9, 2011, is **GRANTED** consistent with the foregoing findings and conclusions and the following orders;

2.  That under FED. R. CIV. P. 12(b)(6), the plaintiff's claim under the Fourth Amendment for malicious prosecution, as alleged in the plaintiff's first claim for relief, is **DISMISSED**;

3.  That under FED. R. CIV. P. 12(b)(6), the plaintiff's claim under the Fourteenth Amendment, as alleged in the plaintiff's second claim for relief, is **DISMISSED** to the extent that this claim is asserted against Jackie Schneider or is based on a claim of malicious prosecution, a claimed liberty interest in her teaching license, or a claimed property interest in her continued employment;

4.  That under FED. R. CIV. P. 12(b)(6), the plaintiff's claims under the Fourth Amendment and Fourteenth Amendment against the Board of Education of Denver Public School District No. 1, as alleged in the plaintiff's first and second claims for relief, are **DISMISSED**;

5.  That under FED. R. CIV. P. 12(b)(6), the plaintiff's claim for defamation against Jackie Schneider, as alleged in the plaintiff's fourth claim for relief, is **DISMISSED**;

      6.  That otherwise, the defendants' **Motion To Dismiss Federal law and**

**Defamation Claims** [#17] filed May 9, 2011, is **DENIED**.

      Dated March 26, 2012, at Denver, Colorado.

                     **BY THE COURT:**

                     Robert E. Blackburn
                     United States District Judge