**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 11-cv-00396-REB-KMT

ELISA GARLAND,

      Plaintiff,

v.

THE BOARD OF EDUCATION OF DENVER PUBLIC SCHOOL DISTRICT NO. 1, a political subdivision of the State of Colorado,
JACKIE SCHNEIDER[1], in her individual and official capacity,
JOHN YOUNGQUIST, in his individual and official capacity,
WILLIAM EWING, in his individual and official capacity, and
SHAWN ALLEGREZZA, in her individual and official capacity,

      Defendants.

**ORDER CONCERNING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**Blackburn, J.**

      This matter is before me on the defendants' **Motion for Summary Judgment** [#88][2] filed February 13, 2012. The plaintiff filed a response [#96], and the defendants filed a reply [#110]. I grant the motion in part and deny it in part.

### I.  JURISDICTION

      I have jurisdiction over this case under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1367 (supplemental).

---

    [1]  In the order [#105] granting in part the defendants' motion to dismiss, all claims asserted against defendant Jackie Schneider were dismissed. However, the court did not order that Ms. Schneider be dropped form this case. At the conclusion of this order, the court directs that Ms. Schneider be dropped from the caption of this case.

    [2]  "[#88]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

## II. STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.[3] FED.R.CIV.P. 56(c); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. **Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); **Farthing v. City of Shawnee**, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably affect the outcome of the case. **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); **Farthing**, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine fact issue. **Concrete Works, Inc. v. City & County of Denver**, 36 F.3d 1513, 1517 (10th Cir. 1994), **cert. denied**, 115 S.Ct. 1315 (1995). By contrast, a movant who bears the burden of proof must submit evidence to establish every essential element of its claim or affirmative defense. **See In re Ribozyme Pharmaceuticals, Inc. Securities Litigation**, 209 F.Supp.2d 1106, 1111 (D. Colo. 2002). In either case, once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. **Concrete Works**, 36 F.3d at 1518. All the evidence must be viewed in the light most favorable to the party opposing the motion. **Simms v.**

---

[3] The issues raised by and inherent to the motion for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motion stands submitted on the papers. *Cf.* **FED. R. CIV. P. 56(c)** and **(d)**. *Geear v. Boulder Cmty. Hosp.,* 844 F.2d 764, 766 (10th Cir.1988) (holding that hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

*Oklahoma ex rel Department of Mental Health and Substance Abuse Services*, 165 F.3d 1321, 1326 (10th Cir.), *cert. denied*, 120 S.Ct. 53 (1999). However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir.), *cert. denied*, 120 S.Ct. 334 (1999); *Nutting v. RAM Southwest, Inc.*, 106 F.Supp.2d 1121, 1123 (D. Colo. 2000).

### III.  FACTS

Much of the factual background underlying the plaintiff's claims is not disputed. The operative complaint is the plaintiffs' **Complaint and Jury Demand** [#1] filed February 15, 2011 (Complaint). In August 2008 the plaintiff, Elisa Garland, was hired at East High School as a participant in the Teacher in Residence (TIR) program of Metro State University.[4] The TIR program is a program in which an individual with a bachelor's degree can take the courses necessary to obtain a regular teacher's license while working as a teacher with an alternative license. Ms. Garland participated in the TIR program from August 2008 through May 2010. The TIR program is a two year program.

East High School is part of the Denver Public Schools. Defendant John Youngquist is the principal at East High School. Defendant William Ewing is a vice principal at East High school. Both Mr. Youngquist and Mr. Ewing exercised supervisory authority over Ms. Garland while she was a teacher at East. Defendant Jackie Schneider, a teacher at East, was Ms. Garland's mentor teacher while Ms. Garland participated in the TIR program at East. Defendant Shawn Allegrezza was a

---

[4] In 2009, the TIR program was replaced by the Alternative Teacher Program.

paraprofessional classroom aid at East.

According to Ms. Garland, on April 6, 2010, Mr. Ewing told Ms. Garland that her evaluation was satisfactory and her contract would be renewed. According to Mr. Youngquist, on April 16, 2010, he decided not to renew Ms. Garland's contract and told Ms. Garland her contract would not be renewed. *Motion* [#88], Exhibit G (Youngquist Deposition) 136:2 - 4. Ms. Garland does not cite evidence to rebut this proposition. *Response*, p. 6. At or about the same time, Mr. Youngquist said also that he would not sign off on Ms. Garland's Teacher in Residence form. Ms. Garland and others perceived that Mr. Youngquist's signature on this form was necessary for Ms. Garland to obtain a teaching license.

According to Ms. Allegrezza, on April 19, 2010, she heard Ms. Garland say that she didn't care about the school, she wouldn't care if the school burned to the ground and "she might just be the one to do it." *Motion* [#88], Exhibit X (Allegrezza Deposition) 181:4 - 10. Ms. Allegrezza reported this statement to Mr. Ewing. *Id.*, 181:11 - 13. On the same day, Ms. Allegrezza also reported to Mr. Ewing that Ms. Garland had made additional threatening statements in February or March of 2010. *Motion* [#88], Exhibit C (Ewing Deposition) 123:5 - 25. Ms. Allegrezza reported that in the past month or two, Ms. Garland had said she was upset with Ms Schneider and that she, Ms. Garland, was "going to fuck her up and put Visine [*sic*] in her coffee and also key her car." *Id.*, 123:9 - 16. Mr. Ewing told Ms. Allegrezza that she should report these threats to the school resource officer (SRO). The SRO was a Denver police officer.

Later the same day, April 19, 2010, Ms. Garland was summoned to a meeting with Mr. Ewing and Mr. Younquist. Mr. Ewing and Mr. Youngquist told Ms. Garland about the threats she reportedly made. Ms. Garland emphatically denied that she made

4

such treats. Ultimately, the SRO reported Ms. Garland's alleged threats to the Denver Police Department. Based on the reports by Ms. Allegrezza and Mr. Ewing, Ms. Garland was charged with disturbing the peace, unlawful acts around a school, and threats to injure a person and to damage property. On April 23, 2010, a warrant for Ms. Garland's arrest was issued. On April 28, 2010, police officers arrested Ms. Garland. About ten hours later, Ms. Garland was released after posting bond. Ultimately, the criminal charges were dismissed. Additional facts are discussed below.

Some of Ms. Garland's claims were dismissed in the order [#105] granting, in part, the defendants' motion to dismiss. Her remaining claims are (1) a Fourteenth Amendment due process claim against all defendants; (2) a breach of contract claim against Mr. Youngquist, Mr. Ewing, and the Board of Education of Denver Public School District No. 1 (the School Board); (3) a defamation claim against Mr. Ewing and Ms. Allegrezza; (4) a malicious prosecution claim against Mr. Ewing and Ms. Allegrezza; and (5) a tortious interference with prospective business relationship claim against Mr. Ewing and Mr. Youngquist.

## IV. FOURTEENTH AMENDMENT - DUE PROCESS

Some aspects of Ms. Garland's Fourteenth Amendment claim were dismissed in the order [#105] granting, in part, the defendants' motion to dismiss. The sole remaining aspect of this claim is discussed below.

As a teacher at East High School, Ms. Garland was a public employee. A public employee can demonstrate infringement of a constitutionally protected liberty interest by showing: (1) statements by the employer that impugn the employee's good name, reputation, honor, or integrity; (2) the statements were false; (3) the statements occurred in the course of terminating the employee and foreclosed other employment

5

opportunities; and (4) the statements were published. ***Darr v. Town of Telluride, Colo***, 495 F.3d 1243, 1255 (10th Cir. 2007); ***Renaud v. Wyo. Dept. of Family Services***, 203 F.3d 723, 728 (10th Cir. 2000).[5] The liberty interest at issue in these circumstances is a person's liberty interest in her good name and reputation as they relate to the employment of that person. ***Darr***, 495 F.3d at 1255. Ms. Garland's Fourteenth Amendment claim concerns the defendant's alleged infringement of her liberty interest in her good name and reputation.

> Due process requires that an employee whose liberty interest is threatened be accorded notice and a hearing. The purpose of such notice and hearing is to provide the person an opportunity to clear his name. Once a person has cleared his name at a hearing, his employer, of course, may remain free to deny him future employment for other reasons. However, only if the employer creates and disseminates a false and defamatory impression about the employee in connection with his termination is such a hearing required. No name-clearing hearing is required when the employee does not dispute the substantial truth of the charges against him.

***Hicks v. City of Watonga, Okl.***, 942 F.2d 737, 745 -746 (10th Cir.1991) (internal quotations and citations omitted).

It is undisputed that the decision not to renew Ms. Garland's contract was made before Ms. Allegrezza reported Ms. Garland's alleged threats to Mr. Ewing, and before Mr. Youngquist learned of the alleged threats. On April 16, 2010, Ms. Garland was notified that her contract would not be renewed. *Motion*, Exhibit G (Younquist deposition), p. 136. On April 19, 2010, Ms. Allegrezza first reported Ms. Garland's alleged threats to Mr. Ewing. The alleged threats were reported later to police. Under these circumstances, Ms. Garland cannot argue plausibly that the statements in

---

[5] The plaintiff notes that there is some dispute about whether the third element should be disjunctive or conjunctive. Reading ***Darr*** and ***Renaud*** together, I conclude that the third element is conjunctive.

6

question, Ms. Allegrezza's report of the alleged threats to Mr. Ewing and the report of the alleged threats to police, were made in the course of terminating Ms. Garland's employment. Rather, these statements were made after the termination was *fait accompli*. Given these undisputed facts, and applying **Darr** and **Reynaud**, Ms. Garland cannot assert that the reports to police violated her liberty interest in her good name and reputation as they relate to employment. The defendants are entitled to summary judgment on Ms. Garland's claim under the Fourteenth Amendment.

## V.  BREACH OF CONTRACT

Ms. Garland's breach of contract claim is based on her contention that the defendants breached the terms of the collective bargaining agreement (CBA) under which she was employed. In her complaint, Ms. Garland alleges that the School Board violated five different provisions of the CBA. ¶ 55. The relevant provisions of the CBA can be found in Exhibit 11 to the plaintiff's response [#96]. In her response [#96], Ms. Garland concedes that Mr. Youngquist and Mr. Ewing are not parties to the CBA. Ms. Graland has agreed to dismiss her breach of contract claim as to Mr. Youngquist and Mr. Ewing.

Thus, Ms. Garland asserts her breach of contract claim against only the School Board. The five alleged breaches of the CBA are discussed below.

First, the School Board allegedly violated Article 10-5-3 of the CBA, which provides specific requirements for a formal observation, as part of a teacher's evaluation. Ms. Garland alleges that the district failed to conduct a formal observation of her before finalizing her annual evaluation for 2009 - 2010. I conclude that there are genuine issues of material fact that preclude the entry of summary judgment on this aspect of Ms. Garland's breach of contract claim. The defendants argue that Ms.

7

Garland did not exhaust her administrative remedies as to her breach of contract claim. As to the first alleged breach, which concerns the CBA's formal observation requirements, the evidence in the record shows that Ms. Garland did exhaust her administrative remedies. *Response* [#96], Exhibit 14.  In their reply [#110], the defendants argue that Ms. Garland has not provided any evidence that she suffered any damages as a result of this alleged breach. This argument was not raised in the defendants' motion for summary judgment and, therefore, the plaintiff has not had an opportunity to address this issue or to present evidence of any damages she may have suffered as a result of this alleged breach.  The School Board's motion for summary judgment is denied as to Ms. Garland's claim alleging a breach of Article 10-5-3.

Second, the School Board allegedly violated Article 11-1, which requires a principal or designee to investigate a complaint against a teacher and to resolve the complaint informally, if appropriate.  Third, the School Board allegedly violated Article 11-3-2, which requires a principal or designee to follow the procedures established in the document "Basic Fairness and Due Process, A Guide for Corrective Discipline." The second and third alleged breaches concern Ms. Garland's contention that East High School officials failed to investigate Ms. Allegrezza's report that Ms. Garland had made threatening statements, did not give Ms. Garland an opportunity to resolve the complaint informally, and did not give Ms. Garland an opportunity to respond to Ms. Alegrezza's report before Ms. Garland was placed on administrative leave.  According to the defendants, the undisputed facts in the record demonstrate their compliance with Articles 11-1 and 11-3-2.  In her response, Ms. Garland does not address the defendants' arguments on these points.

Having reviewed Articles 11-1 and 11-3-2 of the CBA and the evidence in the

record, I conclude that the defendants are entitled to summary judgment on these aspects of Ms. Garland's breach of contract claim. In her deposition, Ms. Garland described how East High School officials contacted Ms. Garland shortly after Ms. Allegrezza's report, discussed the report with Ms. Garland, heard Ms. Garland's denial, and told Ms. Garland they would investigate further. *Motion* [#88], Exhibit A-2 (Garland Deposition) pp. 410 - 411. The deposition of Thomas Conroy demonstrates that the School Board conducted additional investigation. *Response*, Exhibit 8 (Conroy deposition), pp. 41 - 55. This and other evidence in the record demonstrates the School Board's compliance with Articles 11-2 and 11-3-2. Ms. Garland does not cite contrary evidence. Viewing the evidence in the record in the light most favorable to Ms. Garland, no reasonable fact finder could find in favor of Ms. Garland on her claim that the School Board breached Articles 11-1 and 11-3-2 of the CBA.

Fourth, the School Board allegedly violated Article 26-4 , which states an expectation that teachers and administrators will "exhibit positive attitudes and professional behavior . . . ." Fifth, the School Board allegedly violated Article 26-5, which encourages the School Board, teachers, and administrators to "exemplify the highest standards of personal and professional excellence . . . ." Ms. Garland alleges that East High School officials violated Articles 26-4 and 26-5 when they forged Ms. Garland's annual evaluation, failed to sign off on her TIR license, and defamed her.

As the defendants note in their motion for summary judgment, the language in Articles 26-4 and 26-5 is permissive and aspirational, rather than mandatory. As a result, the defendants argue, the defendants' alleged actions cannot be seen as breaches of these provisions. The plaintiff did not respond to these arguments. I agree with the defendants' position. Viewing the evidence in the record in the light most

favorable to Ms. Garland, no reasonable fact finder could find in favor of Ms. Garland on her claim that the School Board violated Articles 26-4 and 26-5 of the CBA.

In sum, the defendants' motion for summary judgment is denied as to Ms. Garland's claim that the School Board violated Artilce 10-5-3 of the CBA. Otherwise, the defendants' motion for summary judgment is granted as to Ms. Garland's breach of contract claim.

## VI.  DEFAMATION

At this point, Ms. Garland's defamation claim is pending against Mr. Ewing and Ms. Allegrezza. To establish a defamation claim, the plaintiff must show: (1) the defendant published a statement; (2) the statement was defamatory (3) the statement was about the plaintiff; and (4) the publication of the statement caused special damages to the plaintiff. **CJI-Civ. 4th** 22:5 and the concomitant *Notes on Use* and *Source and Authority*. A statement is defamatory if it tends to harm the plaintiff's reputation by lowering the person in the estimation of at least a substantial and respectable minority of the community. **CJI-Civ. 4th** 22:7 and the concomitant *Notes on Use* and *Source and Authority*. If a statement is true, the truth of a statement is an absolute defense to a defamation claim. **Gordon v. Boyles**, 99 P.3d 75, 81 (Colo. App. 2004).

In the context of a defamation claim, statements made to a law enforcement officer are shielded by a conditional or qualified privilege. **Burke v. Greene**, 963 P.2d, 1119, 1122 (Colo. App. 1998). The privilege seeks to balance society's interest in detecting and prosecuting crime with the interest of an accused in avoiding false accusation of wrong doing. *Id*. When a "qualified privilege exists, there is a presumption that the communication was made in good faith without malice. The plaintiff has the burden of rebutting that presumption, and may do so by proving that the

defendant published the statement with malice; that is, knowing the statement is false or communicating it in reckless disregard for its veracity." **McIntyre v. Jones**, 194 P.3d 519, 529 (Colo. App. 2008). Generally, absolute immunity does not apply to statements made to a law enforcement officer during an investigation. **See Hoffler v. Colo. Dept. of Corrections** 27 P.3d 371, 375 (Colo. 2001) (statements made in personnel investigation, in contrast to statements made at quasi-judicial personnel hearing, not shielded by absolute immunity); **Burke v. Greene**, 963 P.2d 1119, 1122 (Colo. App. 1998) (statements to law enforcement officer entitled to qualified privilege, not absolute privilege).

Given the evidence in the record, I conclude that there remain genuine issues of material fact concerning Ms. Garland's defamation claim against Mr. Ewing and Ms. Alegrezza. At minimum, there remain factual disputes about the truth of the statements, the defendants' knowledge of the truth or falsity of the statements, or the defendants' reckless disregard for the truth or falsity of the statements. The defendants are not entitled to summary judgment on the defamation claim.

### VII. MALICIOUS PROSECUTION

Ms. Garland brings her common law malicious prosecution claim against Mr. Ewing and Ms. Allegrezza. To prove this claim, the plaintiff must show: (1) the defendant contributed to bringing a prior action against the plaintiff; (2) the action ended in favor of Plaintiff; (3) no probable cause; (4) malice; and (5) damages. **Hewitt v. Rice**, 154 P.3d 408, 411 (Colo. 2007). Malice means "knowing a statement is false or communicating it with reckless disregard for its veracity." **McIntyre v. Jones**, 194 P.3d 519, 529 (Colo. App. 2008).

In the context of a malicious prosecution claim, probable cause means that the

defendant in good faith believed that the plaintiff was guilty of the offense with which she was charged. **CJI-Civ. 4**[th] 17:2 and the concomitant *Notes on Use* and *Source and Authority*. In addition, to establish probable cause, the evidence must show that a reasonable person, under the same or similar circumstances, would have had the same belief. *Id*. According to Mr. Ewing and Ms. Allegrezza, the evidence in the record does not support the no probable cause element or the malice element of this claim.

In the present case, there remain factual disputes about the truth of the statements made by Ms. Allegrezza and Mr. Ewing, their knowledge of the truth or falsity of the statements, or their reckless disregard for the truth or falsity of the statements. These issues of fact preclude the entry of summary judgment on this claim. The defendants are not entitled to summary judgment on the malicious prosecution claim.

### VIII.  TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONSHIP

Finally, Ms. Garland asserts against Mr. Ewing and Mr. Youngquist a claim that they tortiously interfered with her prospective business relationships. This claim is based on the allegation that Mr. Ewing and Mr. Youngquist refused to sign Ms. Garland's Teacher in Residence (TIR) form. *Complaint*, ¶¶ 77 - 83. According to Ms. Garland, the failure of these defendants to sign her TIR form prevented Ms. Garland from obtaining a teaching position in Colorado for several months after April of 2010. The failure of these defendants to sign Ms. Garland's TIR form is the only basis asserted for Ms. Garland's tortious interference claim.

In her response to the motion for summary judgment, Ms. Garland concedes that Mr. Ewing did not have the authority to sign Ms. Garland's TIR form. *Response*, p. 29

n. 40.  As a result, Mr. Ewing cannot be liable for tortious interference with Ms. Garland's prospective business relationships under the theory alleged in the complaint [#1].  Ms. Garland appears to assert that Mr. Ewing's report to police about Ms. Garland's alleged threatening comments is sufficient to support her tortious interference claim.  *Id*.  However, in the complaint, Mr. Ewing's report to police is not alleged as a basis for this claim.  Ms. Garland cannot assert a new factual basis for this claim via argument in her response to a motion for summary judgment.  Mr. Ewing is entitled to summary judgment on Ms. Garland's tortious interference with prospective business relationships claim.

To establish this claim against Mr. Youngquist, Ms. Garland must show that Mr. Youngquist improperly and intentionally interfered with a prospective contractual relationship of Ms. Garland's.  ***Harris Group, Inc. v. Robinson***, 209 P.3d 1188, 1196 (Colo. App. 2009).  "[T]he plaintiff must show that intentional and improper interference prevented a contract from being formed."  *Id*.  Ms. Garland "must show that there is a reasonable likelihood or probability that a contract would have resulted; there must be something beyond a mere hope."  ***Hertz v. Luzenac Group***, 576 F.3d 1103, 1119 (10th Cir. 2009) (internal quotation and citation omitted) (applying Colorado law).

After she was placed on administrative leave in April 2010, Ms. Garland was paid by the School Board through August of 2010.  *Garland Deposition*, 18:6 - 20.  From about September 2010 through November 2010, Ms. Garland participated in a volunteer program in the Middle East.  *Id*., 18:19 - 23.  She began working shortly after she returned from the Middle East, but this work was not as a licensed teacher.  *Id*., 18:22 - 23.  When Ms. Garland was placed on administrative leave in April 2010, she had not completed all of the requirements to obtain a degree from Metro State College.  *Garland*

13

*Deposition*, 383:20 -25.  She was required to complete an assignment known as a teacher work sample before she could graduate from the Metro program.  *Id.*  Because this assignment was not complete, Ms. Garland was not able to graduate from Metro in the Spring of 2010.  *Id.*,  391:2 - 23.

Ms. Garland was required to graduate from her program at Metro before she could obtain a Colorado teaching license.  §22-60.5-201(1)(b), C.R.S.  Ultimately, Ms. Garland completed the teacher work sample assignment and graduated from Metro State College.  *Id.*, 542:10 - 12.[6]  She received a Colorado teaching license in March 2012.  *Id.*, 26:17 - 19.  In her deposition, Ms. Garland contended that she received her teaching license a "year later than I'm supposed to."  *Id.*, 542:20.  Ms. Garland did not apply for any teaching positions until May, 2011.  *Id.*, 26:13 - 22.   She was hired as a teacher on July 1, 2011.  *Id.*, 9:21 - 10:3.

Given these undisputed facts, I conclude that no reasonable fact finder could find for Ms. Garland on her claim against Mr. Youngquist for tortious interference with prospective business relationships.  The undisputed facts in the record do not support a finding that there was a reasonable likelihood or probability that Ms. Garland could have obtained a teaching position or contract between the time Mr. Youngquist refused to sign her TIR form, in April 2010 and the date on which she was hired as a teacher, July 1, 2011.  First, Ms. Garland cites no evidence of potential teaching positions she was likely to have been granted absent Mr. Younquist's actions.  Second, it is undisputed that Ms. Garland was not eligible for a teaching license until she completed her program

---

[6] In their motion for summary judgment, the defendants assert that certain of these events happened on specific dates.  *Motion*, pp. 12 - 13.  However, the exhibits cited by the defendants in support of certain specific factual averments either are not included with the motion or do not support the specific dates asserted by the defendants.  Thus, I do not rely on the defendants' unsupported factual contentions.

at Metro State University. Without a license, Ms. Garland was not eligible for a teaching position. Mr. Youngquist was not an obstacle to Ms. Garland's completion of her program at Metro. Ms. Garland did not complete that program until early 2012. Ms. Garland obtained a teaching license in March 2012 and began work as a teacher in July 2012. Ms. Garland has not submitted any evidence that Mr. Younquist's failure to sign her TIR form in any way impaired or delayed her ability to obtain a job as a teacher. At best, Ms. Garland's evidence demonstrates a mere hope for a teaching position earlier than July 2011, but her evidence does not demonstrate a reasonable likelihood or probability that she could have obtained a teaching position earlier than July 2011, absent Mr. Youngquist's refusal to sign her TIR form. Mr. Younquist is entitled to summary judgment on Ms. Garland's claim of tortious interference with prospective business relationships.

## IX. CONCLUSION & ORDERS

Viewing the evidence in the record in the light most favorable to Ms. Garland, I conclude that no reasonable fact finder could find in favor of Ms. Garland on (1) the one remaining aspect of her Fourteenth Amendment due process claim; (2) her breach of contract claim, to the extent Ms. Garland alleges breaches of Articles 11-1, 11-3-2, 26-4, and 26-5 of the Collective Bargaining Agreement; and (3) her claim of tortious interference with prospective business relationship. The defendants are entitled to summary judgment on these claims.

On the other hand, I conclude that there remain genuine issues of material fact concerning Ms. Garland's breach of contract claim, to the extent she asserts a breach of Article 10-5-3 of the Collective Bargaining Agreement, her defamation claim, and her malicious prosecution claim. The defendants' motion for summary judgment is denied

as to these claims.

**THEREFORE, IT IS ORDERED** as follows:

1. That the defendants' **Motion for Summary Judgment** [#88] filed February 13, 2012, is **GRANTED** as to the plaintiff's Fourteenth Amendment claim, a claim of infringement of the plaintiff's liberty interest in her good name and reputation;

2. That the defendants' **Motion for Summary Judgment** [#88] filed February 13, 2012, is **GRANTED** as to the plaintiff's breach of contract claim, to the extent the plaintiff alleges breaches of Articles 11-1, 11-3-2, 26-4, and 26-5 of the Collective Bargaining Agreement;

3. That the defendants' **Motion for Summary Judgment** [#88] filed February 13, 2012, is **GRANTED** as to the plaintiff's claim of tortious interference with prospective business relationship;

4. That otherwise, the defendants' **Motion for Summary Judgment** [#88] filed February 13, 2012, is **DENIED**;

5. That all claims asserted against defendant Jackie Schneider were resolved in a previous order [#105] and, therefore, defendant Jackie Schneider is **DROPPED** from this action and the caption shall be so **AMENDED**; and

6. That all claims asserted against defendant John Youngquist were resolved in a previous order [#105] and this order and, therefore, defendant John Youngquist is **DROPPED** from this action and the caption shall be so **AMENDED**.

Dated May 21, 2012, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge

16